# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| KIM FORTES, | CASE NO. 08cv317 BTM(RBB) |
|---|---|
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL J. ASTRUE, Commissioner or Social Security, | |
| Defendant. | |

Plaintiff and Defendant have filed cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.

## I. PROCEDURAL BACKGROUND

In December, 2001, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Plaintiff alleged disability beginning December 15, 2001. Plaintiff's claims were denied initially and upon reconsideration. On February 22, 2007, a hearing was held before Administrative Law Judge ("ALJ") Leland H. Spencer. Plaintiff, who was represented by an attorney, testified on her own behalf. A medical expert and vocational expert also testified.

In a decision dated May 24, 2007, the ALJ found that Plaintiff was not disabled.

The ALJ found that (1) Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2002; (2) Plaintiff has not engaged in substantial gainful activity since December 15, 2001; (3) Plaintiff has the following severe impairments: lumbar strain, spondylolisthesis and degenerative disc disease of the lumbar spine; cervical strain; right wrist and hand carpal tunnel syndrome and polyneuropathy; and major depressive disorder; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; (5) Plaintiff has the residual functional capacity to lift or carry 10 pounds frequently and 20 pounds occasionally; sit for 6 hours out of an 8-hour workday; stand for 6 hours out of an 8-hour workday; no more than occasional bending and stooping; no more than occasional use of the right (dominant) hand for gross handling and fine fingering; no more than frequent rotation of the neck; and mentally limited to simple and repetitive tasks; (6) Plaintiff is unable to perform any past relevant work; and (7) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically "host" and "cashier."[1]

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. On February 19, 2008, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe? If not, then the claimant is not disabled. If so, then the evaluation proceeds to step three. (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404? If so, then the claimant is disabled. If not, then the evaluation proceeds to step four. (4) Is the claimant able to do any work that she has done in the past? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step five. (5) Is the claimant able to do any other work? If not, then the claimant is disabled. If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## II. STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. Id. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

## III. DISCUSSION

Plaintiff argues that the ALJ's decision must be set aside because (1) the ALJ's assessment of Plaintiff's residual functional capacity was not supported by substantial evidence from the record; (2) the ALJ's reasons for discrediting Plaintiff's allegations of disabling pain were legally insufficient; and (3) the ALJ failed to resolve conflicts between the testimony of the vocational expert ("VE") and occupational information supplied by the Dictionary of Occupation Titles ("DOT"). The Court will address each of Plaintiff's arguments in turn.

A. The ALJ's RFC Assessment

With respect to Plaintiff's physical functional limitations, the ALJ's assessment was supported by substantial evidence. Although the ALJ gave significant weight to the medical expert's opinion, he did not adopt the medical expert's conclusion that Plaintiff was limited to lifting 25 pounds frequently and 50 pounds occasionally, with no postural limitations except occasional crawling, stooping, and avoidance of concentrated exposure to vibration. (AR 407.) Instead, the ALJ gave weight to the opinions of Brett K. Allen, D.C., Plaintiff's treating chiropractor, and T. Auerbach D.C., an Agreed Medical Examiner, both of whom concluded that Plaintiff was precluded from heavy lifting. (AR 214; 345.) The ALJ found that Plaintiff had the residual functional capacity to lift or carry 10 pounds

frequently and 20 pounds occasionally; sit for 6 hours out of an 8-hour workday; stand for 6 hours out of an 8 hour workday; no more than occasional bending and stooping; no more than occasional use of the right hand for gross handling and fine fingering; and no more than frequent rotation of the neck.  (AR 24.)

The medical records do not reveal physical functional limitations greater than those found by the ALJ.  Plaintiff argues that the ALJ overlooked the portion of Dr. Auerbach's report where Dr. Auerbach reviewed Plaintiff's past medical records.  Dr. Auerbach's summary of the medical records reflects that Dr. Allen's reports indicated that Plaintiff's work status was TTD (temporarily totally disabled) from December 14, 2001 through July 14, 2003.  (AR 338-43.)  However, it does not appear that Dr. Allen made any specific findings of functional limitation establishing that Plaintiff was disabled.  In his August 11, 2003 report, which does discuss Plaintiff's functional limitations, Dr. Allan stated that Plaintiff's disability precluded her from heavy work because Plaintiff had lost approximately 50% of her pre-injury capacity to perform tasks such as lifting, pushing, pulling, repeated bending, stooping, or comparable physical efforts.  (AR 214.)  Dr. Allan also stated that Plaintiff should be precluded from prolonged flexion and rotational movements of the head and neck.  (Id.)  The ALJ's RFC assessment is consistent with Dr. Allan's specific findings regarding Plaintiff's functional limitations.[2]

Plaintiff argues that the ALJ erred in relying on the medical expert's testimony because the medical expert testified outside his field of specialty, did not review the entire medical file, and demonstrated bias against Plaintiff's treating physicians.  Although the medical expert's field of specialty was internal medicine and cardiology, he was still competent to render a medical opinion in Plaintiff's case.  See Kepple v. Massanari, 268 F.3d 513, 516 (7th Cir. 2001).  Furthermore, the record does not support Plaintiff's

---

[2] Plaintiff argues that the only relevant evidence is medical records for the time prior to March 31, 2002, because Plaintiff must establish disability on or before that date. Plaintiff's argument lacks merit. Medical records after March 31, 2002 are still relevant because Plaintiff does not claim that her condition significantly improved. In a report dated November 18, 2002, Dr., Allan stated that Plaintiff's condition had "plateaued under conservative treatment."  (AR 340.)

contention that the medical expert was unprepared and biased to the degree that his testimony could not be relied upon.

Plaintiff also argues that the ALJ erred in relying on an RFC assessment by consultative examiner Dr. Sabourin, because Dr. Sabourin did not review Plaintiff's medical records in preparation of the report. Dr. Sabourin concluded that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, could stand and walk up to six hours of an eight-hour workday and sit for six hours of an eight-hour workday. (AR 220.) Although Dr. Sabourin did not review Plaintiff's medical records, he talked to Plaintiff about the history of her illness and performed his own orthopedic examination, cervical spine examination, lumbar spine examination, extremity examination and neurological examination. (AR 218-20.) Therefore, Dr. Sabourin had a legitimate basis for his opinion, and the ALJ did not err in giving weight to the opinion.

Plaintiff faults the ALJ for not finding limitations with respect to Plaintiff's left upper extremity. Plaintiff points out that EMG studies showed that she had bilateral carpal tunnel syndrome. (AR 313.) However, the record does not reflect that Plaintiff had any functional limitations with respect to her left arm/hand as a result. The medical records focused on Plaintiff's back pain and pain radiating to the lower extremities. During her testimony, Plaintiff emphasized the problems she had using her *right* hand. (AR 398.) When asked if lifting a gallon of milk repeatedly during the course of a day would cause her any pain, she responded that it would cause her pain in her right hand. (AR 404.) Plaintiff did not talk about weakness or pain in her left hand. Therefore, the ALJ did not err in not finding functional limitations with respect to Plaintiff's left upper extremity.

Plaintiff argues that the ALJ failed to explain why Plaintiff's mental limitations did not restrict her to part-time work. Consulting psychologist, Dr. Pena, performed a psychological evaluation of Plaintiff in April, 2007. Dr. Pena diagnosed Plaintiff with Major Depressive Disorder and noted that Plaintiff demonstrated "moderate cognitive and functional impairments." (AR 359.) Dr. Pena also concluded: "Her ability to perform simple and repetitive tasks with appropriate persistence and pace over *a part time work*

*cycle*, within a non-stressful environment, seems to be mildly limited at this time." (AR 360) (emphasis added.)

The ALJ relied on Dr. Pena's evaluation in finding that Plaintiff depression did not meet or medically equal any of the listings. (AR 23.) It appears that the ALJ also relied on Dr. Pena's opinion in determining that Plaintiff was mentally limited to simple and repetitive tasks. (AR 24.) However, the ALJ did not discuss the part-time work restriction implicit in Dr. Pena's opinion. It is unclear whether the ALJ simply overlooked Dr. Pena's reference to part-time work or whether the ALJ rejected the part-time work restriction. To the extent that the ALJ rejected Dr. Pena's opinion that Plaintiff's mental impairment limited her to a part-time work cycle, the ALJ did not provide reasons for such rejection. Therefore, the Court remands the case so that the ALJ may make findings with respect to whether Plaintiff's mental impairment prevents her from working full-time.

B. <u>The ALJ's Rejection of Plaintiff's Pain Testimony</u>

At the hearing, Plaintiff described disabling pain at the bottom of her back in addition to pain shooting down her legs (mostly on the right side) and her right arm. (AR 392.) Plaintiff testified that she can sit for about 20 minutes, can stand for about 10 minutes, and cannot write more than her name with her right hand. (AR 298.) Plaintiff testified that she spends most of the time laying on her side, does not drive anymore, and can't cook, clean, or shop for food. (AR 394, 300.) Plaintiff argues that the ALJ did not provide clear and convincing reasons for finding that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. The Court disagrees.

In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis. See Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996). The first stage of analysis is a threshold test set forth in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test, the claimant must (1) produce objective medical evidence of an impairment or impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom. Id. at 1407-08. If the claimant satisfies the Cotton test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Smolen, 80 F.3d at 1281.

Plaintiff has produced objective medical evidence of impairments, and such impairments could reasonably be expected to produce some degree of pain. Therefore, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's pain testimony.

Although not all of the ALJ's reasons for rejecting Plaintiff's pain testimony were valid, the ALJ did provide some legitimate reasons. The ALJ pointed out that Plaintiff was able to perform light household chores and grocery shop. These daily activities would be inconsistent with the degree of pain alleged by Plaintiff.[3] In addition, the ALJ noted that Plaintiff had a normal gait and did not require any assistive devices to ambulate and that there was no evidence of disuse muscle atrophy, cognitive deficits due to pain, or appetite disturbance due to pain. These are all pertinent considerations. The ALJ also pointed out that Plaintiff's course of treatment has generally reflected a conservative approach. Plaintiff objects to the characterization of her treatment as "conservative." However, even Plaintiff's treating chiropractor, Dr. Allen, described her treatment as "conservative chiropractic treatment." (AR 215.) Although Plaintiff did receive some epidural steroid injections, she did not undergo any surgery. These reasons constitute clear and convincing reasons for rejecting Plaintiff's pain testimony.

C. Vocational Expert Testimony

Plaintiff contends that the ALJ improperly failed to resolve conflicts between the

---

[3] The Court notes that Plaintiff has given varying accounts regarding her ability to grocery shop and clean. At the hearing, Plaintiff said she did not shop for food. (AR 399.) However, she told Dr. Pena that she liked grocery shopping and could perform light housecleaning chores. (AR 354.)

VE's testimony and the occupational information provided by the DOT. Plaintiff is correct.

The VE testified that Plaintiff would be capable of performing "unskilled work." (AR 415.) Assuming functional limitations of lifting 20 pounds occasionally, 10 pounds frequently, standing up to 6 hours out of 8, and sitting for 6 hours out of 8, the VE testified that Plaintiff could perform light duty work such as a cashier (DOT 211.362-010) or inspector (DOT 716.687-030). Adding the additional limitation of occasional handling and fine fingering with the right dominant extremity, the VE testified that the number of jobs that existed were "extremely limited" but that Plaintiff could perform the job of host (DOT 352.667-010) or usher (DOT 344.137-010).

In his decision, the ALJ concluded that Plaintiff could perform the jobs of cashier and host. However, according to the DOT, neither of these jobs is unskilled. Unskilled jobs have a Specific Vocational Preparation (SVP) of 1-2 – i.e., the jobs can be learned within 30 days. 20 C.F.R. § 404.1568(a). The host position has an SVP of 3 and the cashier position has an SVP of 5.

Furthermore, the host position requires *frequent* reaching and handling and the cashier position requires *frequent* reaching, handling, and fingering. The ALJ found that Plaintiff was limited to *occasional* handling and fine fingering with her right hand.

SSR 00-4p explains that when there is an apparent unresolved conflict between the VE's testimony and the occupational information provided by the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." A reasonable explanation for a conflict may be based on information that is not included in the DOT – e.g., information obtained directly from employers or other publications about a particular job's requirements. Id.

Under SSR 00-4p, the ALJ has an affirmative duty to (1) ask the VE if the evidence he or she provided conflicts with information provided in the DOT; and (2) if the VE's evidence appears to conflict with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict. In Massachi v. Astrue, 486 F.3d 1149 (9th Cir. 2007), the Ninth

Circuit held that the ALJ must perform the inquiries under SSR 00-4p before relying on a VE's testimony regarding the requirements of a particular job.

Here, the ALJ did not ask the VE whether her testimony conflicted with any information provided in the DOT and, if so, whether there was a reasonable explanation for the conflict. As discussed above, there was a conflict between her testimony and the DOT. Accordingly, it is unclear what basis, if any, the VE had for testifying that Plaintiff could perform the jobs of host and cashier.[4]

Therefore, the Court remands on the additional ground that the ALJ did not perform the appropriate inquiries under SSR 00-4p.

## IV.  CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment is **GRANTED** and Defendant's motion for summary judgment is **DENIED**. The Court **REMANDS** this case so that the ALJ can (1) consider whether Plaintiff's mental impairment prevent her from working full-time and (2) reevaluate whether, in light of Plaintiff's limitations, Plaintiff can perform any job that exists in a significant number in the national economy, keeping in mind the requirements of SSR 00-4p. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  March 18, 2009

Honorable Barry Ted Moskowitz
United States District Judge

---

[4] When presented with the hypothetical including the limitations with respect to Plaintiff's right upper extremity, the VE suggested "usher" (DOT 334.137-010) as a job Plaintiff could do. However, the SVP for this job is at level 4 and is not unskilled. The Commissioner suggests the alternate jobs of "cashier II" (DOT 211.645-010) and "goodwill ambassador" (DOT 293.357-018). These jobs have an SVP of 2. However, they also require frequent reaching, handling, and fingering. At any rate, the VE did not provide any testimony regarding these jobs and it is not the Court's role to determine what other jobs Plaintiff might be able to do.